UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL PARIS,

     Plaintiff,

v.                                                                Case No. 19-cv-12053

MACALLISTER MACHINERY                        Stephanie Dawkins Davis
COMPANY, INC. d/b/a MICHIGAN          United States District Judge
CAT, ET AL.,

     Defendants.

_____/

## ORDER GRANTING DEFENDANT INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 324's MOTION TO DISMISS [#28]

### I.   INTRODUCTION

Plaintiff, Daniel Paris, filed the present action against his former employer, Macallister Machinery Company, Inc. d/b/a Michigan CAT ("Michigan CAT") and the International Union of Operating Engineers (the "Union"), alleging violations of the Labor Management Relations Act ("LMRA"), the Family Medical Leave Act ("FMLA"), and the Michigan Elliot Larsen Civil Rights Act ("ELCRA"). Paris alleges that Michigan CAT fired him without just cause, in violation of his collective bargaining agreement ("CBA"). He also alleges that the Union breached its duty of fair representation by failing to adequately represent him. The Union moved to dismiss Paris' claims against it, asserting that he fails to state any

plausible claim for relief.  For the reasons that follow, the court finds that Paris fails to sufficiently plead his LMRA claim against the Union and declines to exercise supplemental jurisdiction over Paris' state law discrimination claims. Accordingly, the Union's Motion to Dismiss is **GRANTED**.

## II.    FACTUAL BACKGROUND

Michigan CAT hired Paris as a technician on August 25, 2014 and promoted him to the position of field technician shortly thereafter.  (ECF No. 25, PageID.143).  Paris was a member of the Union throughout his employment with Michigan CAT.  (*Id.*)  He claims that he was harassed and discriminated against by non-union member employees because of his union membership.  (*Id.* at PageID.144).  Paris was twenty-two years old at the time he was hired, and "considerably younger" than the majority of his co-workers. (*Id.* at PageID.143). As a result, Paris alleges that he was also harassed and discriminated against based on his age, including being "talked down to, belittled and treated with much more hostility than any of his co-workers."[1]  (*Id.* at 155)

A "few years" into his employment, Paris' co-workers and managers began to overly scrutinize his work performance, mostly for "negligible" issues.  (*Id.* at PageID.144).  Most of the scrutiny was for actions that his co-workers also committed but for which they did not receive the same level of oversight and

---

[1] The Complaint does not state from whom Paris received this treatment.

scrutiny as Paris. (*Id.*) According to Paris, he tried to defend himself by filing multiple grievances and reporting mistreatment to his supervisors and the Union, but this only exacerbated the mistreatment. (*Id.*) He also requested to transfer work locations to no avail. (*Id.*) Instead, Paris was written up for "minor issues" over a period of one and a half years and offered two-week severance agreements which he declined each time.[2] (*Id.*) On one occasion, Michigan CAT suspended Paris for three days, but he "grieved" the suspension and prevailed.[3] (*Id.*)

In or around December of 2018, Paris's union steward approached him at work, informed him that Michigan CAT was going to terminate him, and asked that Paris wait by the door of the room where the related meeting with Michigan CAT and the Union would be held. (*Id.*) While Paris waited at the door, he informed a co-worker about his pending termination. (*Id.* at PageID.145) His union steward found out that Paris discussed the termination with his co-worker and was angry with him during the meeting as a result. (*Id.*). The union steward told him that he thought he could "get the charges against him dropped," but "could not help him as much" after Paris failed to "keep his mouth shut." (*Id.*) The union steward then presented Paris with the options of either signing a last-

---

[2] The Complaint does not detail the number of severance-agreement offers Paris received.

[3] The Complaint does not detail what this grievance process entailed or state whether the Union assisted.

chance agreement ("LCA") or facing termination with two weeks' severance pay. (*Id.*)  During the meeting, his union steward "framed [Paris'] choices as [Paris] quitting at times" as opposed to being terminated, and agents of both Michigan CAT and the Union acknowledged that Paris "was being targeted and treated differently." (*Id.* at PageID.146)*.*  The agents also advised that, to remedy the situation, Paris should "stop talking" and filing grievances.  (*Id.*)  After being "left with no choice," Paris claims that Michigan CAT and the Union "forced and coerced" him into signing the LCA during the meeting.  (*Id.* at PageID.145, 150, 155).  Michigan CAT also demoted Paris from Field Technician to "Tech I" which resulted in a pay cut.  (*Id.* at PageID.151).  Paris "attempted to grieve the issue or thought that he was in the process of grieving, however, . . . it seems that [the Union] failed to process the grievance." (*Id.*)

On December 20, 2018, Paris's manger approached him and accused him of not wearing steel-toed boots as required by Michigan CAT.  (*Id.* at PageID.146). When Paris responded that he was wearing the appropriate boots, his manager tried to grab him and step on his foot to confirm.  (*Id.*)  Paris pulled away from his manager's hold, informed Human Resources about the altercation and was cleared of any wrongdoing.  (*Id.*)

On January 11, 2019, Paris's union steward informed him that Michigan CAT was terminating him because he violated the LCA.  (*Id.* at PageID.147).

4

When Paris asked for more details, the union steward indicated that Paris had not worn steel-toed boots the prior month.  (*Id.*)  Three days later, Paris called several agents of the Union[4] but no one answered or returned his calls.  (*Id.* at PageID.148).  The same day he made these calls, Paris also texted his union benefit director to ask why he was terminated and to ask him to file a grievance.  (*Id.*)  The benefit director told Paris that he could not file a grievance because he signed an LCA and, about one week later, sent Paris a list of infractions that Michigan CAT alleged were the basis of his termination.  (*Id.*)  The list did not include the allegation regarding steel-toed boots.  (*Id.*)  Instead, it consisted of "negligible" infractions that Paris' co-workers routinely committed and never got reprimanded for, and other vague infractions that included no factual support.  (*Id.*)  For example, one infraction was listed as "[r]ework/failure to follow established work rules."  (*Id.*)  Paris denies committing any of the listed infractions, was not made aware of the allegations until he received the list, and notes that the majority purportedly occurred before he signed the LCA.  (*Id.* at PageID.148–49).  Ultimately,  he was "told that he could not file a grievance, and no investigation into any of the allegations was ever commenced."  (*Id.* at PageID.149)

---

[4] Paris alleges he called his union steward, the benefit director, president, the office, and any other number that he had for agents of the Union.

### III.   PROCEDURAL BACKGROUND

Paris filed this lawsuit against Michigan CAT and the Union on July 10, 2019.  (ECF Nos. 1, 24 and 25).  He later amended the complaint, alleging that Michigan CAT improperly terminated him and the Union breached its duty of fair representation, both in violation of the Labor Management Relations Act.  (*Id.* at PageID.149).  Paris's Amended Complaint (the "Complaint") also brings claims under FMLA against Michigan CAT, age harassment/discrimination and retaliation claims pursuant to the ELCRA against both Defendants, and hostile work environment ELCRA claims against Michigan CAT.  (*Id.* at PageID.152–57).

The Union filed a Motion to Dismiss the Complaint, arguing that Paris's claims against it are precluded by the statute of limitations and, irrespective, the allegations are conclusory and fail to state a plausible claim.  (*Id.* at PageID.212–14).  The Union's motion has been fully briefed and is now before the court.

Pursuant to Local Rule 7.1(f)(2), the court has concluded that oral argument is not necessary to rule on the present Motion.  (ECF No. 31).  For the reasons that follow, the court **GRANTS** the Union's Motion to Dismiss.

### IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss.  The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present

plausible claims.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must "allege enough facts to make it plausible that the defendant bears legal liability."  *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016).  The facts need to make it more than "merely possible that the defendant is liable; they must make it plausible."  *Id.*  "Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim."  *Id.*  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  However, at the motion to dismiss stage of litigation, a plaintiff is not required to provide every fact that may be raised at trial.  *Armstrong v. Shirvell*, 596 F. App'x 433, 444 (6th Cir. 2015).  Nor do facts need to be pleaded with particularity.  *Id.*  "[A] complaint [may] contain either direct or inferential allegations respecting all the material elements [of a claim] to sustain recovery under some viable legal theory.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436–37 (6th Cir.1988) (internal quotation marks omitted).

A well-pleaded complaint may survive a motion to dismiss even if the court believes that actual proof of the pleaded facts is improbable, and that recovery is unlikely.  *Twombly*, 550 U.S. at 556.  A claim will be dismissed "if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that

relief is barred by an affirmative defense." *Riverview Health Inst., LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010).

## V.   DISCUSSION

### A. STATUTE OF LIMITATIONS

As an initial matter, the Union contends that the statute of limitations bars Paris's claims.  (ECF No. 28, PageID.212–14).  The court finds that the claims were filed within the appropriate time period and are thus not barred by the statute of limitations.

The issue before the court is when Paris's claims accrued in this case.  The statute of limitations for hybrid § 301 actions is six months.  *Garrish v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 417 F.3d 590, 594 (6th Cir. 2005).  The Sixth Circuit has followed the Eleventh Circuit in holding that "the separate causes of actions in a hybrid § 301/fair representation claim accrue simultaneously." *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993) (citing *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986)).  The "timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or should have known of the employer's final action, whichever occurs later." *Id.* With respect to the union's actions in hybrid § 301 claims, "[b]y final action[,] [the court] mean[s] the point where the grievance procedure was exhausted or

8

otherwise broke down to the employee's disadvantage." *Proudfoot*, 779 F.2d at 1559; *see also Robinson*, 987 F.2d at 1239 (holding that hybrid § 301 claims accrued against employer and union simultaneously when deadline for arbitration passed without action by union after employee's allegedly wrongful discharge).

Accordingly, Paris' hybrid § 301 claims accrued simultaneously at the time of either Michigan CAT's or the Union's final action, whichever occurred last. The Parties' pleadings and briefing clearly establish that Michigan CAT's final action was terminating Paris, which occurred on January 11, 2019. The question of when the Union's final action occurred is less clear, especially absent briefing of this issue by either party. It appears the Union's final action could have occurred at the time that it represented Paris in signing the LCA in December 2018, or when it declined to grieve either Paris' demotion in December 2018 or his termination.[5] Regardless, such a determination has no bearing on the court's analysis here. If the Union's final action occurred in December 2018, Michigan CAT's final action (January 11, 2019) still occurred later and would thus dictate the accrual date for Paris' hybrid § 301 claim against both Defendants. And if the Union's final action

---

[5] There may also be an issue with respect to whether the Union's final action of failing to grieve the termination would have occurred at the time of the termination or after Paris exhausted his internal remedies. Indeed, the LCA adjusts the timeline and/or availability of Paris' internal remedies and he disputes the enforceability of the LCA. However, the court need not resolve this issue here, as this question will not affect its analysis regarding the statute of limitations because Paris filed this lawsuit less than six months after his termination and any event following his termination.

occurred at the time of Paris' termination or any time after, it would have been
taken within six months or less of the filing of this lawsuit.  Paris filed this lawsuit
on July 10, 2019, one day shy of six months after his termination and necessarily
less than six months after any of the Union's actions that followed his termination.
Therefore, the statute of limitations does not bar Paris's claims because it was filed
less than six months after Michigan CAT's final action and any final action (or
inaction) by the Union that followed.

### B. LABOR MANAGEMENT RELATIONS ACT

As noted above, Paris brings a hybrid § 301 claim under the Labor
Management Relations Act.  In Count I of the Complaint he asserts that the Union
breached its duty of fair representation and Michigan CAT wrongfully terminated
him.  Regarding the Union, Paris contends that it breached its duty by failing to
grieve his demotion and termination.  The Union argues that Paris does not
plausibly allege that it denied him fair representation because he does not offer
facts demonstrating that he asked the Union to grieve his demotion and it failed to
do so.  The Union further maintains that the LCA not only provided "just cause"
for Paris's termination, but also precluded his access to the grievance process.

A hybrid § 301 case contains "two separate but interdependent actions: one
against the employer for breach of the collective bargaining agreement and one
against the union for breach of the duty of fair representation." *Robinson v. Cent.*

*Brass Mfg. Co.*, 987 F.2d 1235, 1238–39 (6th Cir. 1993).  To prevail under either claim, a plaintiff must show both that the employer discharged him in violation of the collective bargaining agreement and that the union breached its duty of fair representation.  *Robinson*, 987 F.2d at 1239.  "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  "Under this tripartite standard, a court should look to each element when determining whether a union violated its duty."  *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010).  "Therefore, the three separate levels of inquiry are as follows: (1) did the union act arbitrarily; (2) did the union act discriminatorily; or (3) did the union act in bad faith."  *Id.* (citation and quotations omitted).  Moreover, "ordinary negligence, without more, cannot establish a breach of the duty of fair representation."  *Ruzicka v. Gen. Motors Corp.*, 649 F.2d 1207, 1212 (6th Cir. 1981).  When the "union can articulate a sufficient legal rationale to justify the manner in which a grievance has been handled," "[w]hatever the rationale, the standard against which it is judged should be uniform."  *Id.*  "An unwise or unconsidered decision by the union is therefore not necessarily irrational."  *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991).  But, ignoring a grievance or processing a grievance in a perfunctory manner "may violate the duty of fair

representation." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Nat'l Labor Relations Bd.*, 844 F.3d 590, 603 (6th Cir. 2016) (quoting *St. Clair v. Local 515*, 422 F.2d 128, 130 (6th Cir. 1969)).

Because Paris' hybrid § 301 claims are interdependent, the court need not address the claims in any particular order and will first address Paris's claims against the Union.  *See Jones v. Interlake Steamship Co.*, No. 20-2210, 2021 WL 3719355, at *3 (6th Cir. Aug. 23, 2021) ("An employee's hybrid claim must fail if the employee cannot satisfy *both* prongs of that test.") (quotation marks and citation omitted).

### 1.     Failure to grieve demotion

The first question before the court is whether the Complaint plausibly alleges that the Union failed to grieve Paris's demotion.  Paris offers two main allegations for support.  First, the Complaint alleges that "Plaintiff was wrongly removed from his position as a field technician and forced to take a pay-cut, which Plaintiff attempted to grieve or thought he was in the process of grieving; however, it now appears that Defendant Union failed to process the grievance[.]"  (ECF No. 25, PageID.151).  Second, it states that "Plaintiff . . . was wrongly forced to take a pay-cut[.]"  *Id.*  He expounds on this second allegation in his briefing, explaining that the Union's agents "talked him into . . . receiving a pay cut."  (ECF No. 29, PageID.231).  Paris relies on *Dumas v. Hurley Medical Center* 837 F. Supp. 2d 655

(E.D. Mich. 2011) to support that the above allegations are adequate, as the plaintiff in that case alleged a single factual assertion which was enough to avoid dismissal of her hybrid § 301 claims.

In response, the Union maintains that Paris has not pleaded sufficient facts to plausibly allege that it failed to grieve his demotion or breached its duty of fair representation. Specifically, the Union challenges Paris's assertion that the plaintiff in *Dumas* only alleged one fact, and the Union distinguishes *Dumas* as applying a less stringent standard because the plaintiff in that case was *pro se*. The court agrees.

Though a plaintiff is not required to provide every fact that may be raised at trial at the motion to dismiss stage, the complaint must still "allege enough facts to make it plausible that the defendant bears legal liability." *Agema*, 826 F.3d at 331 (6th Cir. 2016). Bare assertions of legal liability absent corresponding facts will not suffice, as a plausible allegation requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the claim. *See Twombly*, 550 U.S. at 556.

Here, the Complaint makes no mention of Paris' demotion or the Union's failure to grieve the same in its Statement of Facts. Instead, Paris vaguely asserts in Paragraphs 82 and 84 of Count I that he "attempted to grieve or thought he was in the process of grieving" the demotion, he was "wrongfully forced to take the

pay-cut," and the Union "failed to process the grievance." (ECF No. 25). Paris does not offer facts to inform the court or the Union about what, if any, actions he took in an attempt to grieve the demotion or why he otherwise thought the process had been initiated. The court is required to accept all well-pleaded facts as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But these facts are not-well-pleaded. Even viewing the facts in the light most favorable to Plaintiff, his allegation that he either "attempted to grieve *or* thought he was in the process" of doing so does not plausibly establish that Paris took action to request that the Union grieve his demotion. Whereas Paris clearly states that he texted his union benefit director to request a grievance with respect to his termination and the union benefit director refused, he furnishes no such detail as to any request to grieve the demotion. His omission of comparable supporting allegations in this regard is fatal. Paris's failure to mention his demotion in the Statement of Facts coupled with his use of the word "or" in characterizing the actions he alleges he personally took (i.e., actions that he should be certain of) to initiate a grievance is not sufficient. Paris is equivocal about whether he attempted to grieve the pay cut or simply "thought" the Union would automatically do so.

Though the Statement of Facts in the Complaint does not mention Paris's demotion, his brief discussion of the demotion in Count I alleges that it occurred when he signed the LCA. (ECF No. 25, PageID.151). Viewing the facts most

favorable to Paris, the court observes that the Complaint does mention additional actions taken by the Union during the meeting where Paris signed the LCA, which is seemingly the same meeting where the demotion occurred.  Specifically, the Complaint alleges that during the meeting, a union representative was angry with Paris for discussing his pending termination with a coworker and admitted that he thought he could get the charges against Paris dropped before Paris failed to keep his mouth closed.  According to the Complaint, the union representative also acknowledged that Paris was being targeted and treated differently and he advised Paris to stop talking and filing grievances.  Though these facts show that the Union representative may not have been optimistic about Paris' chances of success with the grievance process, Paris does not sufficiently allege that he requested that the Union grieve his demotion and the Union refused.

The Complaint also makes no attempt to set forth the procedural structure of the grievance process to establish that the Union failed to take any or all of the steps in the process.  The facts need to make it more than "merely possible that the defendant is liable; they must make it plausible."  *Agema*, 826 F.3d at 331.  As the Union correctly points out, Paris's reliance on *Dumas* to support his position is misplaced.  Noting that the plaintiff in *Dumas* was not represented by counsel, the court acknowledged that "it is well established that *pro se* pleadings are held to a less stringent standard than those prepared by an attorney."  837 F. Supp. 2d at

661.  (citation and quotation marks omitted).  Here, Paris does not appear *pro se*
before the court.  And even if the court were to apply *Dumas*, Paris' allegations to
support his claim that the Union breached its duty by failing to grieve his demotion
would still fall short.  The *pro se* plaintiff in *Dumas* at least included details that
she approached both her immediate supervisor and her union representatives to
discuss filing a grievance and they "failed to initiate the established grievance
procedures" in response to her request.  *Id.* at 660.  Conversely, Paris's allegations
do not say whether he requested a grievance or simply thought the Union had done
so on its own accord.  Nor does Paris offer any facts to establish if and/or when the
latter would be required.  As such, Paris has not adequately alleged that he asked
the Union to grieve his demotion, it was required to do so, and it failed.  Absent
this plausible allegation, the court need not determine whether such failure would
have amounted to bad faith, discriminatory or arbitrary conduct in violation of the
Union's duty of fair representation.

### 2.    *Failure to grieve and/or investigate termination*

The next question before the court is whether Paris plausibly alleges that the
Union's refusal to grieve his termination was a breach of its duty of fair
representation.  Paris advances two main arguments for support: (1) the Union's
refusal to investigate and/or pursue his grievance was discriminatory, arbitrary
and/or done in bad faith; and (2) because the Union coerced Paris into signing the

LCA, it is unenforceable.  In response, the Union contends that: (1) the LCA

superseded the CBA, and because Paris's violation of the LCA provided "just

cause" for his termination, it also eliminated Paris's access to the grievance

process; and (2) Paris has not adequately pleaded that the Union coerced him into

signing the LCA.

A breach of the statutory duty of fair representation occurs only when a

union's conduct toward a member of the collective bargaining unit is in bad faith,

discriminatory, or arbitrary.  *Vaca*, 386 U.S. at 190.  The court finds that Paris has

not sufficiently alleged that the Union refused to pursue his grievance in bad faith,

discriminatorily, or arbitrarily so as to constitute a breach of its duty of fair

representation.

### a. Bad faith

Paris has not adequately alleged that the Union acted in bad faith.  For the

Union's conduct to amount to bad faith, it must have "act[ed] with an improper

intent, purpose, or motive . . . encompass[ing] fraud, dishonesty, and other

intentionally misleading conduct."  *Merritt*, 613 F.3d at 619 (quotations and

citation omitted).  The Complaint and Paris' briefing only mentions "bad faith" in

relation to the Union's failure to investigate the allegations Michigan CAT offered

to justify terminating Paris.[6]  Notably, Plaintiff offers no facts to support his claim that the Union did not investigate the circumstances surrounding his termination. Admittedly, the Complaint does state that Paris "was told that he could not file a grievance, and no investigation into any of the allegations was ever commenced." (ECF No. 25, PageID.149).  However, Paris does not state who told him that there would be no investigation.  The Complaint generally references the actions of several Union representatives, Michigan CAT representatives and Paris' co-workers throughout, inviting the court to speculate as to whom Paris intends to attribute these statements.  And, as the Union correctly points out, the Complaint states that a representative of the Union sent him a list of infractions that Michigan CAT relied on to support the termination.  Therefore, it is undisputed that the Union did in fact inquire of Michigan CAT about the circumstances that gave rise to Paris' termination and provided Paris with a summary of the same.  The court acknowledges Paris' allegation that he did not commit the infractions, was not made aware of them until he received the list, and the majority occurred before he

---

[6] The Complaint also states that the Union does not represent non-vested members "with as much vigor" as vested members.  (ECF No. 25, PageID.147).  Paris does not clearly connect this assertion to his "bad faith" allegation.  However, to the extent that he so intended, his attempt is insufficient.  The allegation is bare and conclusory, as Paris offers no examples concerning the treatment of others and no additional facts to support or at least detail the conduct he believes constitutes "vigor."  The court therefore cannot rely on this allegation to find plausibility in Paris' claim that the Union acted with bad faith.  *See Agema*, 826 F.3d at 331 (6th Cir. 2016) (the complaint must "allege enough facts to make it plausible that the defendant bears legal liability.")

signed the LCA.  (*Id.* at PageID.148–49).  However, Paris has cited no case establishing that his dissatisfaction with the sufficiency or findings of the Union's investigation shows that it acted in bad faith.  *See Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991).  ("An unwise or unconsidered decision by the union is therefore not necessarily irrational.")  Nor has Paris alleged that the LCA required that he commit more than one infraction before his termination would be justified—to the extent he relies on his allegation that the *majority* of the infractions occurred prior to the LCA.  The court therefore does not find it plausible that the Union acted in bad faith in failing to grieve Paris' termination, based on his allegations that the Union refused to investigate.

### b.  Discriminatory conduct

Paris has not adequately alleged that the Union discriminated against him. Conduct rises to the level of discriminatory if it is "intentional, severe, and unrelated to legitimate union objectives."  *Merritt*, 613 F.3d at 619.  "Without more, merely alleging that a union's conduct favored one group over another does not constitute a breach of the duty of fair representation."  *Id.* at 621.  "Whether a bargaining representative has acted fairly, impartially, and without hostile discrimination depends on the facts of each case."  *Id.*  Here, Paris references discrimination throughout the Complaint and briefing, but attributes the conduct to his coworkers and Michigan CAT.  Paris does not attempt to connect any of the

Union's specific actions to his allegations of discrimination with respect to his LMRA claim.  Instead, Paris almost exclusively reserves any reference to discrimination for his state law ELCRA claims.  Paris' argument with respect to the Union's discrimination in the LMRA context is underdeveloped, and the court will not make the arguments for him.  *See Merritt*, 613 F.3d at 619 ("Bad faith or intentional discrimination must be shown."); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293 – 94 (1st Cir. 1995) (citation omitted).

### c.  Arbitrary conduct

Paris has not sufficiently alleged that the Union acted arbitrarily.  Conduct is arbitrary if it is "so far outside a wide range of reasonableness as to be irrational." *Id.*  (quoting *O'Neill*, 499 U.S. at 78[*sic*]).  Thus, "[o]f course, when a bargaining representative acts arbitrarily in failing to process a grievance submitted to it by an employee without a sound reason for its decision. . . the union [will be] liable for unfair representation."  *Ruzicka*, 649 F.2d at 1212.  The Sixth Circuit has well established that when an employee is terminated under an LCA, the LCA

supersedes the applicable CBA and will constitute "just cause" for immediate

discipline. *See Tecnocap LLC v. Graphic Commc'ns Conf./Int'l Bhd. of Teamsters*

*Loc. 24M*, 777 F. App'x 804, 807 (6th Cir. 2019); *see also Voss Steel Emps. Union*

*v. Voss Steel Corp.*, 16 F.3d 1223 (6th Cir. 1994) (an LCA "is typically drawn

among the employer, the union representing the collective bargaining unit of which

the employee is a part, and the employee who has violated a work rule, thus

subjecting himself to discipline (often immediate termination)").

Accordingly, "[a]s a general rule, an employer may rely on the finality

provision of a grievance and arbitration clause in a collective bargaining

agreement." *Ruzicka*, 649 F.2d at 1212. And the Sixth Circuit has suggested that

an LCA can effectively serve as a finality provision in CBAs. *See Tecnocap LLC*,

777 F. App'x at 807 ("an LCA is an agreed-upon predetermination of just cause")

(quotations omitted); *see also Cotter v. DaimlerChrysler Corp.*, 87 F. Supp. 2d

746, 757 (E.D. Mich. 2000) ("The [LCA] must be treated in the same manner as

the CBA since it is a negotiated agreement that supplements the CBA.") Notably,

"[a]n exception to that rule is created when the contractual process has been

seriously flawed by the union's breach of its duty to represent employees honestly

and in good faith and without invidious discrimination or arbitrary conduct." *Id.*

(quotations marks and citation omitted). Therefore, a plaintiff can challenge the

finality of an LCA by sufficiently alleging that the contractual process was

seriously flawed due to the union's breach of its duty of fair representation.  *Id.*
The finality of an LCA can also be dismantled with a non-frivolous allegation of
coercion.  *See Miller v. Dep't of Air Force*, 178 F.3d 1307, *2 (Fed. Cir. 1998).
However, "bare allegations of intimidation, coercion, and the like. . . do not suffice
. . . where the allegations are belied by the active participation of [the] union
representative during the [LCA] negotiations and the representative's signature on
the agreement."  *See Briscoe v. Dep't of Veterans Affs.*, 55 F.3d 1571, 1574 (Fed.
Cir. 1995) (affirming the decision of Merit Systems Protection Board to uphold
finality of LCA).  Thus, a plaintiff must advance more than unsupported assertions
to create a plausible inference of coercion.  *See Miller*, 178 F.3d at *2 (affirming
decision of Merit Systems Protection Board finding that plaintiff was not coerced
into signing an LCA absent evidence of coercion beyond unsupported assertions).

Here, Paris does not offer any facts or case law to dispute that the LCA, if
valid, superseded the CBA and provided just cause for his termination.  Such facts
and analysis, if true, could support a claim that the Union's rationale for refusing to
grieve Paris' termination was not sound and it therefore acted arbitrarily.  *See
Ruzicka*, 649 F.2d at 1212 ("when a bargaining representative acts arbitrarily in
failing to process a grievance submitted to it by an employee *without a sound
reason* for its decision. . . the union [will be] liable for unfair representation."

(emphasis added).  Instead, Paris attempts to circumvent this hurdle by attacking the validity of the LCA.

According to Paris, the LCA is unenforceable because the Union coerced him into signing it.  More specifically, he relies on *Kelsey-Hayes Co. v. Galtaco Redlaw Castings Corp.*, 749 F. Supp. 794, 796 (E.D. Mich. 1990) to argue that he signed the LCA under economic duress.  *Kelsey-Hayes Co* involved a dispute over a contract between two companies for the sale of castings where one was faced with economic duress due to the other's failure to produce castings pursuant to the contract.  *Id.* at 797.  The defendant demanded an increase in its price that was higher than the agreed upon contract price.  *Id.*  The plaintiff vigorously protested, but ultimately paid the higher price after contacting six other manufacturers and finding that none were able to accommodate its needs.  *Id.*  In finding that the plaintiff agreed to the defendant's demand under economic duress, the court noted that "a contract is voidable if a party's manifestation of assent is induced by an *improper threat* by another party that leaves the victim no reasonable alternative. *Id.* at 797 (emphasis added).  And, "[i]n order to state a claim of economic duress[,] a buyer coerced into executing a modification to an existing agreement must at least display some protest against the higher price in order to put the seller on notice that the modification is not freely entered into."  *See id.* at 799 (also

noting it was undisputed that the plaintiff "vigorously objected" to the defendant's breach).

Paris has not established any similarity between the facts of *Kelsey-Hayes Co* and the present case. Paris asserts throughout the Complaint that the Union "forced and coerced" him into signing the LCA. (*See* ECF No. 25, ¶¶ 31, 72-75, and 118). The Complaint further states that Paris's union representative told him that he could either sign the LCA or face termination by the Union. In his briefing, Paris further alleges that agents of the Union "talked him into signing" the LCA. (*See* ECF No. 29, PageID.231). But, Paris's bare allegations of "force," "coercion" and being "talked into" signing the LCA are not enough, as they are unsupported by any facts or analysis to inform the court of what conduct of the Union's Paris believes rose to the level of coercion. *See Briscoe*, 55 F.3d at 1574 (noting unsupported conclusory allegations of coercion are insufficient to invalidate an LCA). Moreover, Paris complains that he had to choose between termination and signing the LCA but cites no case law to support that the threat of termination here was wrongful or improper. Rather, Paris cites a case that involves a dispute over a contract for the sale of goods where a company was faced with economic duress after being forced to either pay more than the contracted amount for goods or fail to meet its delivery requirements with other companies. *Kelsey-Hayes Co.*, 749 F. Supp. at 796. Paris offers no analysis to show that his LCA is

comparable to the contract for the sale of goods in *Kelsey-Hayes Co.* and the court is not convinced otherwise. In any event, Paris' allegations still fall short under *Kelsey-Hayes Co.*, as the court noted that the plaintiff in that case vigorously protested before succumbing to the defendant's demand. Here, Paris has not alleged any such a protest.

The Complaint does not sufficiently allege that the LCA did not provide just cause for Paris' termination. Nor does it plausibly allege that the Union coerced Paris into signing the LCA. As such, the court does not find it plausible based on Paris' allegations that the Union's reliance on the LCA as "just cause" for Paris' termination was arbitrary. And to the extent Paris contends that the Union was negligent in failing to process his grievance with respect to either his demotion or termination, this argument also fails. *See Ruzicka*, 649 F.2d at 1212. ("ordinary negligence, without more, cannot establish a breach of the duty of fair representation.")

Paris has not plausibly alleged that the Union's actions were taken in bad faith, discriminatory, or arbitrary. Based on the foregoing, the court concludes that the Complaint fails to state a plausible claim that the Union breached its duty of fair representation. Because "[a]n employee's hybrid claim must fail if the employee cannot satisfy both prongs of that test[,]" the court need not analyze Paris's wrongful termination claim against Michigan CAT. *Jones*, 2021 WL

3719355, at *3.  The court concludes that Paris's LMRA claim against the Union cannot survive the Union's Motion to Dismiss.  And, due to the hybrid nature of Paris's claims, his LMRA claim against Michigan CAT for wrongful termination (Count I) also fails.  *See Robinson*, 987 F.2d at 1238–39 (noting hybrid § 301 cases contain "two separate but *interdependent* actions[.]) (emphasis added); *see also id.* at 1239 ("the employee must show *both* that the employer discharged him in violation of the collective-bargaining agreement *and* that the union breached its duty of fair representation during the grievance process. Therefore, the two claims are often combined in a single lawsuit and referred to as a hybrid § 301/fair representation claim.")

## A. ELCRA CLAIMS

Count IV of the Complaint alleges harassment and discrimination on the basis of age in violation of the Michigan Elliot-Larsen Civil Rights Act against the Union and Michigan CAT.  Count V alleges retaliation in violation of the ELCRA against both Defendants.  The Union contends that this court should refuse to exercise supplemental jurisdiction over Paris's state law claims because his federal claims do not survive the Union's Motion to Dismiss.  The Union also argues that Paris does not allege sufficient facts to support an ELCRA violation.  Paris maintains that both Defendants treated him differently due to his age, that he stated

his ELCRA claims clearly in the Complaint, and that his ELCRA claims are viable. (ECF No. 29, PageID.237–38).

Pursuant to 28 U.S.C. § 1367, district courts may exercise supplemental jurisdiction over state law claims.  However, "supplemental jurisdiction is discretionary, not mandatory."  *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011).  A district court may decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of [s]tate law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273, 281 (6th Cir. 2014).  The court has dismissed Paris' federal claims against the Union for alleged violation of the LMRA.  Therefore, the court will decline to exercise supplemental jurisdiction over Paris' state law discrimination claims against the Union.

## VI.   CONCLUSION

For the reasons discussed herein, the court finds that Paris fails to sufficiently plead a violation of the duty of fair representation against the Union. Therefore, Paris cannot sustain his hybrid § 301 claim against the Union or Michigan CAT for their alleged violations of the LMRA.  And, because this court

has dismissed the federal claims against both Defendants, the court will decline to exercise supplemental jurisdiction over Paris's state-law ELCRA claims. Accordingly, the court **GRANTS** Defendant's Motion to Dismiss.  Paris' hybrid § 301 claim against the Union and Michigan CAT, along with his state-law claims against both Defendants are dismissed.

SO ORDERED.

Dated:        December 7, 2021

s/Stephanie Dawkins Davis
HON. STEPHANIE DAWKINS DAVIS
United States District Court Judge