UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL PARIS,

    Plaintiff,

v.

MACALLISTER MACHINERY
COMPANY, INC. d/b/a MICHIGAN
CAT,

    Defendant.
_____/

Case No. 19-12053
Hon. Denise Page Hood

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 50]

### I.    INTRODUCTION

Before the Court is Defendant MacAllister Machinery Company, Inc.'s ("MacAllister") Motion for Summary Judgment. [ECF No. 50]. The motion is fully briefed and a hearing was held. For the reasons stated herein, MacAllister's motion is GRANTED.

### II.    BACKGROUND

This is an employment case. Paris began his employment with MacAllister at the age of twenty-two. [ECF No. 54, PageID.1187]. Paris was initially hired in 2014 as a Service Trainee at MacAllister's Brownstown, Michigan location. [ECF No. 50,

PageID.403]. The parties agree that Paris was promoted several times, first to the Service Technician 4 position in September of 2015 (see *Id*. at PageID.405) then to the Field Technician role in May of 2016. *Id*. at PageID.405. As a Field Technician, Paris was assigned to a particular MacAllister customer where he was responsible for full service, bumper-to-bumper tasks for their CAT trucks. *Id*. By all accounts, Paris was a dues paying member of the union and was subject to the collective bargaining agreement. [ECF No. 54, PageID.1187].

A few years into his employment, Paris began receiving negative work reviews, which he attributes to harassment and discrimination because of his membership in the union. *Id*. The parties agree that Paris was reclassified from a Field Technician to a Service Technician 1 in 2017. [ECF No. 55-4, PageID.1211]. About one year later, Paris was again reclassified to a Service Technician 3. [ECF No. 55-5, PageID.1213]. Both reclassifications included a pay reduction. On October 31, 2018, Paris was given a last-chance agreement. [ECF No. 54, PageID.1189].

Towards the end of his employment in 2018, Paris began experiencing severe anxiety. [ECF No. 55-6, PageID.1300]. Paris asserts that his anxiety stemmed from "the fact that [he] was unfairly targeted, was demoted, was one of the only people in the entire building to be demoted. Being forced to sign paperwork with literature that [he] did not read." *Id*. On December 19, 2018, Paris was confronted by his

2

supervisor, Patrick Monahan, regarding whether Paris was wearing the proper protective gear, i.e. steel-toed boots. [ECF No. 54, PageID.1190]. When Paris said he was, Monahan stepped on the front of Paris's shoes to confirm. *Id*. Paris contacted human resources shortly thereafter to report the incident and expressed that he was having an "anxiety attack" and needed to take the rest of the day off. *Id*. Peter Israel informed Paris that he could utilize leave under the Family Medical Leave Act, 28 U.S.C.A. § 2601, *et seq.* ("FMLA"). On December 21, 2018, Paris contacted Irina Itskovich to inquire about the process necessary to request FMLA leave for his "medical condition." [ECF No. 50-29, PageID.1159]. Itskovich responded with the company's FMLA request form and asked Paris to return the completed form to her at his earliest convenience. *Id*. at PageID.1158. Paris did not return the completed form.

Paris has lodged a six-count Amended Complaint for the events described. The counts include: (1) Breach of the Collective Bargaining Agreement as to Defendant MacAllister and Breach of the Duty of Fair Representation as to Defendant Union in Violation of § 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185, *et al.*; (2) Compensatory Damages to Recover Straight Compensation due under the CBA in violation of § 301 of the LMRA as to Defendant Employer; (3) Interference/Retaliation in Violation of the Family and Medical Leave Act, 29 USC 2601, *et seq.* as to Defendant Employer; (4) Harassment and

Discrimination on the Basis of Age in violation of the Elliot-Larsen Civil Rights Act, MCL 37.2101, et seq. as to all Defendants; (5) Retaliation in Violation of the ELCRA as to all Defendants; and (6) Hostile workplace Environment in Violation of the ELCRA as to Defendant Employer. The only remaining claim is Count III. See ECF No. 42.

MacAllister has filed a motion for summary judgment as to Count III of the Amended Complaint. For the reasons stated herein, MacAllister's motion is GRANTED.

### III.  ANALYSIS

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment on some or all counts. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to establish that there is no genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A). "As the party moving for summary judgment, Defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim." *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th

4

Cir. 2001). Courts "must accept Plaintiff's evidence as true and draw all reasonable inferences in her favor[.]" *Id*. The Court "may not make credibility determinations nor weigh the evidence before it when determining whether an issue of fact remains for trial." *Id*.

### A. FMLA - Interference

29 USC § 2615 makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 USC § 2615(a)(1). To establish a prima facie case of FMLA interference, a plaintiff must show that (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of her intention to take leave; and (5) the employer denied the employee FMLA benefits to which she was entitled. *Rumph v. Randazzo Mech. Heating & Cooling, Inc.*, No. 17-10496, 2018 WL 5845898, at *5 (E.D. Mich. Nov. 8, 2018). A successfully pleaded prima facie case for either FMLA interference or retaliation shifts the burden to MacAllister to present a legitimate, nondiscriminatory reason for its decision to take adverse action against Paris. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

Here, MacAllister argues that Paris failed to establish a prima facie case for FMLA interference. [ECF No. 50, PageID.416] MacAllister argues that Paris cannot establish the final three prongs of the interference analysis because there is no

5

evidence showing that Paris was entitled to FMLA leave, that he gave notice of an intent to take FMLA leave, or that MacAllister denied Paris FMLA leave. *Id*. at PageID.416-420.

Paris argues that his FMLA interference claim must survive as a matter of law because he has shown that he was suffering from severe anxiety "a condition that falls squarely within the statutory definition of a 'serious health condition.'" [ECF No. 54, PageID.1194]. Paris further argues that he provided sufficient notice of the need for FMLA leave, and MacAllister interfered with Paris' right to take FMLA leave by "failing to approve his leave request and terminating him shortly thereafter." *Id*. at PageID.1194-95.

### 1. FMLA Entitlement

Paris has not shown that he was entitled to FMLA leave. 29 USC § 2612(a)(1)(D) allows an eligible employee to take up to 12 work weeks of leave during any 12-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee. A "serious health condition" is "an illness, injury, impairment or physical or mental condition that involves inpatient care as defined by 825.114 or continuing treatment by a health care provider as defined by 825.115. 29 CFR § 825.102. Section 825.115 defines continuing treatment as:

(a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

(3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

\* \* \*

(c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

\* \* \*

(f) Absences attributable to incapacity under paragraph (b) or (c) of this section qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a

>certain level. An employee who is pregnant may be unable to report to work because of severe morning sickness.

29 CFR § 825.115.

Paris testified in his deposition that he did not see a mental health professional to address his anxiety. [ECF No. 55-6, PageIDD.1301]. He also testified that he continues to patron his former worksite to purchase parts since being terminated. *Id.* at PageID.1302. While Paris did send an e-mail to Peter Israel, a human resources representative at MacAllister, stating that he was "mentally distraught and having an anxiety attack" and "taking personal time off the rest of the day[,]" there is no further evidence showing that Paris suffered incapacity rising to the level of a serious medical condition as defined above. [ECF No. 55-11, PageID.1353]. Nowhere in Paris' declaration does he declare that he experienced any duration of incapacity related to his anxiety or required ongoing treatment. [ECF No. 55-8; ECF No. 50-30, PageID.1166].

Paris cites *Render v. FCA US, LLC*, 53 F.4th 905 (6th Cir. 2022) for the proposition that severe anxiety qualifies as a serious health condition under FMLA. [ECF No. 54, PageID.1193-94]. However, *Render* is distinguishable from the present matter because FCA had approved Render's request for intermittent FMLA leave which was supported by medical documentation. *Render*, 53 F.4th at 910. The Sixth Circuit did not address whether Render was entitled to FMLA leave because "there was no dispute that…Render was entitled to FMLA leave because of his

serious health condition," which was supported by record evidence. *Id*. at PageID.914. Paris has not presented any such evidence. Therefore, Paris has not shown that the anxiety he suffered qualified as a serious health condition as defined by FMLA and its supporting regulations.

### 2. FMLA Notice

Paris did not provide MacAllister adequate notice of an intent to take FMLA leave. 29 CFR § 825.301(b) requires employees seeking FMLA leave to "state a qualifying reason for the needed leave and otherwise satisfy the notice requirements set forth in § 825.302 or § 825.303[.]" It further requires employees to "explain the reasons for the needed leave so as to allow the employer to determine whether the leave qualifies under the Act. If the employee fails to explain the reasons, leave may be denied." 29 CFR § 825.301(b). Section 825.302(c) requires employees to "at least provide verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. Subsection (d) allows an employer to "require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 CFR § 825.302(d). "[A]n employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave." *Id*.

9

Paris cites *Hammon v. DHL Airways, Inc.*, 165 F.3d 441 (6th Cir. 1999) for the proposition that employees are not required to expressly assert a right to take leave under the FMLA. [ECF No. 54, PageID.1194]. However, Paris conveniently overlooks the following sentence that states "the employer bears the obligation to collect any additional information necessary to make the leave comply with the requirements of the FMLA. *Hammon*, 165 F.3d at 450. Paris further disregards *Hammon's* holding that the district court properly held that plaintiff failed to show that he requested leave under the FMLA reasoning that "[p]laintiff failed to show that he had given DHL representatives sufficient information for them to conclude that he was suffering from a serious medical condition." *Id*.

Paris argues that he "informed Defendant that he was experiencing severe anxiety, which rendered him unable to perform his job duties, and communicated his need for leave to address his health condition." [ECF No. 54, PageID.1194]. There is no record evidence showing Paris requesting leave. The record documents show that Paris e-mailed Peter Israel on December 19, 2018, regarding an incident between himself and his supervisor which caused Paris to have an anxiety attack and the need to take the rest of the day off. [ECF No. 55-11, PageID.1353]. Israel responded on December 20, 2018, informing Paris of the option to take FMLA and/or sick leave if he qualified. *Id*. at PageID.1352. Paris asked Irina Itskovich about the process necessary to request medical leave on December 21, 2018. [ECF

10

No. 50-29, PageID.1159]. Itskovich responded less than one hour later with MacAllister's FMLA request form and asked Paris to complete the form and send it back at his earliest convenience. *Id*. at PageID.1158.

Paris has not provided any evidence to rebut Irina Itskovich's declaration asserting that she provided Paris with MacAllister's request for FMLA form via e-mail upon his request and asked that the completed form be sent back at his earliest convenience. [ECF No. 50-28; ECF No. 50-29]. There is no dispute as to whether MacAllister's request for FMLA form comports with 29 CFR § 825.302(d). Paris has not provided any evidence showing that he completed the required form. Therefore, Paris has not provided evidence to support the notion that he provided adequate notice of an intent to take FMLA leave.

The Court need not address the final prong. Because the Court finds that Paris failed to properly request/give notice of an intent to take FMLA leave, MacAllister could not have denied Paris leave.

MacAllister's Motion for Summary Judgment is GRANTED as to Paris' claim for FMLA Interference.

### B. FMLA - Retaliation

Paris also brings a claim for FMLA retaliation. Paris claims that MacAllister retaliated against him by terminating his employment weeks after his request for FMLA related to his anxiety. [ECF No. 25, PageID.154]. To establish a prima facie

11

case of FMLA retaliation, Paris must show that "(1) [he] was engaged in an activity protected by the FMLA; (2) the employer knew that [he] was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir.2006). Where, as here, a plaintiff relies on circumstantial evidence to establish a claim for retaliation, the claim is analyzed under the *McDonnel Douglas* burden shifting standard. *Render*, 53 F.4th at 920. If Paris can establish a prima facie retaliation claim, then the burden shifts to FCA to show that it had "a legitimate, nondiscriminatory reason" for terminating him. *Id*.

MacAllister argues that Paris's FMLA retaliation claim fails because he cannot establish that he was engaged in an activity protected by the FMLA and he cannot establish that MacAllister's reasons for terminating him were pretext. [ECF No. 50, PageID.423]. Paris argues that his inquiry about FMLA leave constitutes protected activity under the FMLA even if he did not return the form or visit a healthcare provider. [ECF No. 54, PageID.1198, citing *Render*, 53 F.4th 905]

Paris misunderstands the holding in *Render*. The *Render* court held that the district court did not properly conclude that plaintiff improperly requested leave. 53

12

F.4th at 920 ("Render alleges sufficient facts to support a finding that he properly requested FMLA leave, and that FCA knew of this request."). The plaintiff in *Render* contacted his supervisor and requested FMLA leave. *Id*. at 910. When FCA requested medical documentation to support the request, plaintiff's doctor "submitted a medical certification form" noting that plaintiff "needed intermittent FMLA leave to manage his major recurrent depression and moderate/generalized anxiety disorder." *Id*. FCA issued plaintiff a conditional approval letter upon finding that plaintiff qualified for FMLA leave. *Id*. The Court held that on these facts, plaintiff showed that he gave proper notice to FCA of his "FMLA qualifying" reason for initially taking leave. *Id*. at 916.

Paris cites a portion of the opinion which states "employers are charged with knowing about FMLA protected activity as soon as an employee requests leave, even if it turns out the employee was not entitled to benefits. It is the request that is protected activity." [ECF No. 54, PageID.1198]. This portion of the opinion was mentioned in regard to plaintiff's subsequent utilization of FMLA leave and not his initial request. 53 F.4th at 920. The notice requirements for plaintiff, at that point, were less stringent than those necessary for FCA to determine whether plaintiff qualified for leave, initially. The Court stated "FCA knew Render was engaging in protected activity when he first applied for intermittent leave in October 2017." *Id*.

13

Here, Paris only requested information about the process of requesting FMLA leave. There is no evidence that Paris provided any notice, verbally, written or otherwise, that he intended to take FMLA leave due to anxiety. Paris' request for an FMLA request form does not rise to the level of engaging in protected activity under FMLA. See *Render*, 53 f4 at 920, citing *Basch v. Knoll, Inc.*, 619 F. App'x 457, 461 (6th Cir. 2015) (finding that protected activity begins when employee requests intermittent leave and provides certification of a qualifying medical reason). Paris has not demonstrated that he provided MacAllister with a proper request for FMLA leave and unlike *Render*, dismissal of Paris's retaliation claim is appropriate.

1. **Pretext**

The Court need not address whether MacAllister's reason for termination is pretextual because it finds that Paris was not engaged in a protected activity under the FMLA. MacAllister's Motion for Summary Judgment is GRANTED as to Paris's retaliation claim.

IV. **CONCLUSION/ORDER**

In light of the foregoing,

IT IS ORDERED that Defendant's Motion for Summary Judgment [ECF No. 50] is GRANTED;

IT IS FURTHER ORDERED that Count III of Plaintiff's Amended Complaint is DISMISSED;

14

IT IS FURTHER ORDERED that this Order dismisses the only pending claim against Defendant and closes the case.

SO ORDERED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: August 7, 2025